CHRIS GUHL, AS ADMINISTRATOR OF THE ESTATE OF FERDINAND GUHL, DECEASED V. WARROAD STOCK, GRAIN AND PRODUCE COMPANY AND OTHERS.[1]

October 15, 1920.

No. 21,900.

**Failure to guard opening made by cutting ice.**

1. The statute requires every person removing ice from the waters of this state to guard the openings thus made until ice has again formed to a thickness of at least six inches. The deceased was drowned in an opening made by defendants, and the evidence sustains the finding that the opening was not guarded, and that ice had not again formed therein to the thickness of six inches.

**Death by wrongful act — loss sustained by next of kin.**

2. The charge properly limited the damages to the pecuniary loss sustained by the next of kin, and cannot be construed as authorizing damages to next of kin who had sustained no pecuniary loss.

**Contributory negligence — intoxication of decedent.**

3. If the deceased was intoxicated, that fact should be considered by the jury in connection with all the other facts and circumstances in determining whether he was guilty of contributory negligence, but did not in itself establish such negligence. Defendants' requests might have led

[1]Reported in 179 N. W. 564.

the jury to give undue effect to the fact of intoxication, if they found that the deceased was intoxicated, and the court did not err in refusing to give them.

### Amendment of complaint — refusal of continuance.

'4. The rulings permitting an amendment to the complaint and refusing a continuance were within the discretion of the court.

Action in the district court for Roseau county to recover for the next of kin $75 for the death of plaintiff's intestate. Plaintiff's motion at the trial to amend the complaint so as to demand $7,500 instead of $75, was granted, Watts, J. The jury returned a verdict for $750. From an order denying their motion for a new trial, Grindleland, J., acting in place of Watts, J., who was ill, defendants appealed. Affirmed.

*Alexander Fosmark* and *W. E. Rowe,* for appellants.

*M. J. Hegland* and *C. W. Scrutchin,* for respondent.

TAYLOR, C.

In March, 1919, the defendants cut and removed ice from the surface of the Warroad river in the village of Warroad in Roseau county. On the night of April 5, 1919, Ferdinand Guhl was drowned in the opening from which defendants had removed the ice. The administrator of his estate, alleging that defendants had failed to fence or guard the opening, brought suit for damages and recovered a verdict. Defendants appeal from an order denying a new trial.

The statute provides that every person cutting and removing ice from any waters in this state, "shall surround the cuttings and openings made with fences or guards sufficient to warn all persons of the same, and shall maintain such fence or guard until the ice has again formed in such openings to the thickness of at least six inches." G. S. 1913, § 8781.

1. That the opening was neither guarded nor covered with ice at the time of the accident is not disputed, but defendants claim that they guarded it while removing the ice, that they completed such removal on March 5, and that ice again formed in the opening to a thickness of more than six inches within seven or eight days thereafter. The specific question as to whether ice to the thickness of six inches or more had

formed in the opening after defendants had removed their ice was submitted to the jury, who answered the question in the negative. Defendants contend that this finding cannot be sustained under the evidence.

· They and their employees testified that they constructed a chute from the opening in the river to the ice-house on its bank upon which the ice was conveyed to the ice-house; that they finished taking out ice on March 5; that they removed the chute a week or ten days later; that in taking out the chute they cut away the new ice which had formed around the end of the chute in the opening, and that this ice was seven or eight inches in thickness. Most of these witnesses· made no statement concerning the thickness of the ice except at the place where they chopped out the chute, but one of them says that it was about the same thickness all over the opening. Defendants also put in evidence the official weather record kept at Warroad during the month of March and the first part of April, from which it appears that the temperature was considerably below the freezing point during most of the time from March 5 to March 21, after which date the weather moderated. The river seems to have been used as a highway· during the winter, and there was considerable travel both on foot and with teams which passed near this opening. Several of plaintiff's witnesses state that there was no fence or guard about the opening at any time. One witness, who passed the place frequently, states· that the ice was cut about the middle of March, but is unable to fix the date. Another witness states that the ice was cut between March 6 and 11, and that the opening was not wholly frozen over on March 20. Another witness states that he found the hole open on March 31. As the opening was in the river, the jury ·could infer that the water was flowing down stream and that ice would not form on it as readily nor to the same thickness as on water not in motion, although there was no testimony as to the rate of the current.

From the record we are unable to say that the jury were required as a matter of law to take the testimony of defendant's witnesses in respect to the thickness of the ice which they cut away from the chute· as conclusive evidence that ice had formed over the entire opening to a thickness of at least six inches, and it follows that the finding must stand.

2. The deceased died unmarried. The complaint alleged that he left

a sister as his next of kin. The evidence tends to show that he had contributed moderate amounts toward the support of this sister for several years. The evidence also shows that two brothers survived him, but no claim is made that he had ever contributed toward their support, and no claim for compensation is made on their behalf. Defendants contend that the charge of the court permitted the jury to take all his brothers and sisters into account in assessing the damages, and that this was erroneous for the reason that the damages are limited to the pecuniary loss sustained, and that only the sister sustained any pecuniary loss. We think the charge was not subject to this criticism. The court stated:

"The damages awarded must be solely by way of compensation for pecuniary loss. Punitive damages are not allowed. No compensation can be awarded for wounded feelings, or loss of the companionship and comfort of the deceased, or for pain and suffering. The true test is—what, in view of all the facts in evidence, was the probable pecuniary interest of the beneficiary in the continuance of the life of the deceased and the income derived therefrom. His health, age, probable duration of life, talents, habits of industry, success in life, and the amounts in money or service which he was accustomed to furnish the beneficiary, or in this case it would be the next of kin, his brothers and sisters, if he had any."

The statement to the effect that the jury, in fixing the amount of compensation, could take into account the amount in money or services which the deceased had been accustomed to furnish to his brothers and sisters, cannot be construed as authorizing an allowance on account of brothers or sisters to whom he had never furnished any aid and who made no claim for compensation.

3. The answer alleged contributory negligence on the part of the deceased. On the night of the accident a light rain was falling which turned into sleet and the night was very dark. The deceased lived alone in a small shack on the north bank of the river a few hundred feet from the opening made by defendants. He spent part of the afternoon and evening of this day at the home of a niece on the south bank of the river. According to his relatives, he left there not more than 30 minutes before midnight and was then perfectly sober. According to witnesses for defendants, he was in the village on the north bank of

the river at midnight and was then considerably intoxicated. On the following morning his body was found in the opening from which the ice had been taken. Nothing more is known concerning the accident. The court charged in general terms as to contributory negligence, but made no reference to the matter of intoxication. Defendants contend that the court erred in refusing to give two requests which they proffered. In the first they asked the court to charge that if the deceased was intoxicated,

"Such intoxication is evidence from which the jury may infer that deceased was guilty of contributory negligence and which would prevent you from giving the plaintiff a verdict."

In the second they asked the court to charge that if the deceased, "was so intoxicated as to be unable or incapable of managing and controlling himself with ordinary care and prudence, then the deceased could not be said to be in the use of ordinary care, and, if this want of ordinary care produced or contributed to produce the accident, the plaintiff is not entitled to recover."

Plaintiff is entitled to the benefit of the presumption that the deceased exercised due care for his own safety. Dunnell, Minn. Dig. 1916 Supp. § 2616, and cases there cited. If he was intoxicated that condition did not establish contributory negligence on his part, but was only an item of evidence to be considered by the jury, in connection with the presumption of due care and all the other facts and circumstances, in determining whether he was in fact chargeable with such negligence. 2 Dunnell, Minn. Dig. § 7028, and cases there cited. McIntosh v. Standard Oil Co. 89 Kan. 289, 131 Pac. 151, and cases cited in note appended to this case in 47 L.R.A. (N.S.) 730, Ann. Cas. 1914D, 112. If the deceased was intoxicated, that fact did not relieve him from the duty of exercising the degree of care for his own safety ordinarily exercised by a sober man under similar circumstances, but, unless he failed to exercise such a degree of care, he was not guilty of contributory negligence whether intoxicated or not. From the first of defendant's requests the jury might have understood that the fact of intoxication was evidence of contributory negligence which would prevent a recovery. From the second they might have understood that, if the deceased was intoxicated to the degree stated, it necessarily followed that he could

not have used ordinary care for his own safety at the time of the accident. These requests might have led the jury to give undue weight and effect to the matter of intoxication, and we cannot say that the court erred in refusing to give them.

The complaint alleged damages in the sum of $75 and demanded judgment in that sum. At the opening of the trial, plaintiff was permitted to amend the complaint by alleging damages in the sum of $7,500 and demanding judgment in that sum. Thereupon defendants moved for a continuance on the ground that they were surprised and were not prepared to meet the issue as to amount of damages thus raised. This motion was denied and defendants insist that the ruling was error. Both granting the amendment and refusing the continuance were clearly within the discretion of the trial court.

We find no other questions requiring special mention and the order appealed from is affirmed.